**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| CURTIS WILLIAMS | : | |
| | : | |
| v. | : | NO. 23-CV-4033 |
| | : | |
| J. RIVELLO, et al. | : | |

**REPORT AND RECOMMENDATION**

SCOTT W. REID                                    DATE: August 5, 2024
UNITED STATES MAGISTRATE JUDGE

This is a *pro se* petition for writ of habeas corpus filed pursuant to 28 U.S.C. §2254 by

Curtis Williams, who is currently incarcerated at SCI Huntingdon, in Huntingdon, Pennsylvania.

For the reasons that follow, I recommend that the petition be denied.

I.      *Factual and Procedural Background*

On June 22, 2017, following a jury trial in the Court of Common Pleas for Philadelphia

County, Williams was convicted of first-degree murder and related firearms offenses.  *Petition* at

¶¶ 1, 2, 5.  He was sentenced on the same day to a mandatory sentence of life imprisonment.  *Id*.

at ¶¶2, 3.

The facts underlying Williams' conviction were set forth in the Pennsylvania Courts as

follows:

> On December 20, 2014, Williams shot and killed the decedent, Robert Andrews, in front
> of the decedent's home at 1600 Paul Street in Philadelphia.  Michael Rich, the decedent's
> cousin, heard numerous gunshots, looked out of the window of the home located at 1600
> Paul Street and observed Williams running with a silver and black gun.  He knew
> Williams from seeing him around the neighborhood for the previous three months.
> Williams also had a distinctive limp and was wearing a black sweatshirt with the insignia
> "Columbia" on it, which Mr. Rich had seen Williams wearing earlier in the day.  Rich
> went outside and found the decedent on the sidewalk, shot multiple times.

Approximately two weeks before the decedent's murder, Rich saw Williams running past his house with his distinctive limp while holding a silver and black gun.

Blanche Jackson, also a cousin of the decedent, was present at the Paul Street home when the murder occurred.  She heard a gate rattle, followed by the decedent saying "Oh, shit," followed by numerous gunshots.

Jackson looked out the bathroom window and saw Williams standing under a streetlight, placing a big silver gun into his waistband before running through the alleyway.  Jackson knew the Defendant from seeing him around the neighborhood.

The day after the murder, Jackson was approached by "G" who she had seen hanging with Williams.  "G" told Jackson that she would be next if she talked to the cops.

Daryl Harrison Locke told detectives that he had known Williams for over five years. Two weeks before the murder, Williams showed Locke a silver colored .40 caliber Smith & Wesson with black grips.

Locke recanted at trial, testifying that the detectives told him what to say in his statement. It should be noted that Locke was stabbed in prison after his statement was passed around the block in the prison prior to him testifying.

Finally, Police Officer Lally testified that on December 27, 2014, he arrested Williams and recovered from his waistband a chrome and black .40 caliber Smith & Wesson firearm.

*Commonwealth v. Williams*, 293 A.3d 640 (Table), 2023 WL 2231257 at *1 (Pa. Super. Feb. 27, 2023).  (Repetitions of Williams' name removed from brackets for ease in reading).

After his conviction, Williams' counsel filed a timely appeal, claiming in his Concise Statement under Pennsylvania Rule of Appeal 1925(b) that the verdict at trial was based on insufficient evidence, and against the weight of the evidence; and that the trial court erred in denying Williams' motion to suppress the firearm recovered from him on the basis that he was arrested without probable cause.  *Commonwealth v. Williams*, CP-51-CR-0005345-2015 (C.C.P. Phila. Mar. 26, 2018), attached to *Commonwealth's Response* as Exhibit B-1, at 2.

However, Williams was subsequently granted leave to dismiss counsel and proceed *pro se*. *Id*. Ultimately, the only issues he raised in his direct appeal were (1) that the trial court erred in denying him an evidentiary hearing on the claim that Detective James Pittss, one of the detectives who interrogated Daryl Harrison-Locke, was known to fabricate evidence and suborn perjury; and (2) somewhat obscurely, that the Commonwealth had waived its right to try him for first-degree murder by declining to seek the death penalty. *Commonwealth v. Williams*, 3690 EDA 2017, 2019 WL 3800286 (Pa. Super. Aug. 13, 2019) at *1. The Pennsylvania Superior Court denied Williams' appeal on August 13, 2019. *Id*. Williams did not seek review in the Pennsylvania Supreme Court.

Williams then filed a timely *pro se* petition under Pennsylvania's Post Conviction Relief Act, ("PCRA"), 42 Pa. C.S. §9541, *et seq*. 2023 WL 2231257 at *2. In it, he argued that trial counsel was ineffective for (a) failing to object to vouching in the prosecutor's closing argument; (b) failing to raise the claim that he could not be tried for first-degree murder because the Commonwealth did not seek the death penalty; and (c) not investigating Detective Pittss' former misconduct. *Id.*

PCRA counsel was appointed, but moved on March 18, 2021, to withdraw under *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988), having concluded that there was no merit to Williams' claims. *Id*. Williams was granted two extensions in which to respond to the PCRA court's notice of its intent to dismiss the petition under Pa. R. Crim. 907, but his motion for a third extension was denied. *Id*. He did not file a response. On August 26, 2021, the PCRA court formally dismissed Williams' petition without a hearing. *Id*.

3

Williams appealed the dismissal of his PCRA petition to the Pennsylvania Superior Court. *Id*. In his appeal, he argued that "PCRA counsel's independent review of the record was insufficient to find meritorious issues to raise because he did not try to obtain the homicide file … in his case before he moved to withdraw." *Id*. The Superior Court, however, affirmed the dismissal of Williams' PCRA petition on February 27, 2023. *Id*. at *5.

On October 16, 2023, Williams filed the present petition for habeas corpus relief. In it, he raises the following claims: (1) the evidence in his case was insufficient to support his conviction; (2) counsel for the prosecution committed impermissible vouching in his closing argument; (3) trial counsel was ineffective in failing to object to the trial counsel's vouching; (4) the prosecution violated *Brady v. Maryland* by concealing the fact that Detectives Pittss and Jenkins were on a "no-call list" because each of them had a history of misconduct; (5) trial counsel was ineffective for failing to enforce Williams' "disclosure rights" under *Brady*; (6) the court wrongly instructed the jury in some respects and (7) counsel was ineffective in failing to object to the defective instructions.

II.    *Relevant Legal Standards*

   A.    *Exhaustion and Procedural Default*

Before a federal court can consider the merits of a habeas claim, a petitioner must comply with the exhaustion requirement of 28 U.S.C. § 2254(b), giving "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This requires the claim to have been presented at least to the Pennsylvania Superior Court. *Lambert v. Blackwell*, *supra*, at 387 F.3d 233-4.

4

A petitioner's failure to exhaust state remedies may be excused in limited circumstances on the ground that exhaustion would be futile. *Lambert v. Blackwell*, 134 F.3d 506, 518-19 (3d Cir. 1997). Where such futility arises from a procedural bar to relief in state court, the claim is subject to the rule of procedural default. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). In addition, if the state court does not address the merits of a claim because the petitioner failed to comply with the state's procedural rules in presenting the claim, it is also procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The procedural default doctrine prohibits a federal court from reviewing a habeas claim which was dismissed by the state court based on an independent and adequate state procedural rule. *Coleman*, *supra*, at 749; *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007). The doctrine is grounded in concerns of comity and federalism. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Edwards*, *supra*, *quoting Coleman*, *supra*, at 501 U.S. 732.

A procedural rule provides an independent and adequate basis for precluding federal review if: (1) the rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claim on the merits; and (3) their refusal is consistent with other decisions. *Nara*, at 488 F.3d 199. It is "independent" if it is independent of the federal question presented by the petitioner. *Id.* It is "adequate" for procedural default purposes if it was "firmly established, readily ascertainable, and regularly followed at the time of the default." *Szuchon v. Lehman*, 273 F.3d 299, 327 (3d Cir. 2001). These requirements ensure that federal review is not barred unless a habeas petitioner had fair notice of the need to follow what could fairly be called rules of general applicability. *Bronshtein v. Horn*, 404 F.3d 700, 707 (3d Cir. 2005).

Procedural default can be overcome only where a habeas petitioner shows: (a) cause for his failure to comply with state procedural rules, and prejudice resulting therefrom; or (b) that a fundamental miscarriage of justice will occur if the claim is not considered. *Edwards*, *supra*. A showing of cause demands that the petitioner establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, *supra*, at 501 U.S. 753. Examples of suitable cause include a showing that the factual or legal basis for a claim was not reasonably available to counsel, or a showing that "some interference by officials" made compliance with the state rule impracticable. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Once cause is proven, a petitioner must also show that prejudice resulted from trial errors that worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

A fundamental miscarriage of justice ordinarily requires a showing of strong evidence of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 316 (1995). This requires the petitioner to present new, reliable evidence of innocence that was not presented at trial. *Id.* at 324.

B.      *Ineffective Assistance of Counsel*

To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must show that: (a) counsel's performance was deficient and (b) counsel's actions prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1983).

Counsel's conduct is presumed to fall "within the wide range of professional assistance" and it is the petitioner's burden to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, at 466 U.S. 689-90. The inquiry requires courts to be highly deferential to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight. *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d

6

Cir. 2002).  The mere existence of alternative – even preferable or more effective – strategies does not satisfy the requirements of demonstrating ineffectiveness under *Strickland*.  *Marshall*, *supra*, at 307 F.3d 86.  Further, counsel cannot be found ineffective for failing to raise a meritless claim.  *Laffler v. Cooper*, 566 U.S. 156, 167 (2012); *Werts v. Vaughn*, 228 F.3d 178, 202 (3d Cir. 2000).

To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* at 466 U.S. 694.  A reasonable probability is a probability "sufficient to undermine confidence in the outcome."  *Id* at 694.  In other words, the petitioner need not show that there would definitely have been a different outcome, but must show that the "result of the proceeding was fundamentally unfair or unreliable."  *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

C.    *Brady v. Maryland*

In *Brady v. Maryland*, 373 U.S. 83 (1963), the United States Supreme Court decided that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment.  *Id*. at 87.  To establish a violation of *Brady*, it must be shown that (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment.  *U.S. v. Schneider*, 801 F.3d 186, (3d Cir. 2015).

Evidence is favorable under *Brady* if it is either impeaching or exculpatory.  *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *U.S. v. Georgiou*, 777 F.3d 125, 142 (3d Cir. 2015).  To be favorable, the suppressed evidence need not show defendant's innocence conclusively.  *Dennis v. Secretary, Pennsylvania Department of Corrections*, 834 F.3d 263, 287 (3d Cir. 2016).  To

hold otherwise confuses the weight of the evidence with its favorable tendency. *Kyles v. Whitley*, 514 U.S. 419, 450-51 (1995); *Dennis*, *supra*.

Whether impeachment or exculpatory, however, suppressed favorable evidence only requires a new trial under *Brady* where it is material. *Giglio v. United States*, 405 U.S. 150, 154 (1972). "Materiality" under *Brady* means that there must be a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *U.S. v. Bagley*, 473 U.S. 667, 682 (1985). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id*.

III.    *Discussion*

A.    *Insufficiency of the Evidence*

As above, Williams included a claim of insufficient evidence in his counseled statement under Pa. R.A.P. 1925. However, when he was subsequently granted leave to dismiss his counsel and proceed *pro se*, he did not raise an insufficiency of the evidence claim in his appellate brief. 2019 WL 3800286 at *1. Accordingly, this claim is unexhausted, under *O'Sullivan v. Boerckel*, *supra*.

Further, the claim is procedurally defaulted because Williams could not return to the Pennsylvania courts to exhaust it now. Pennsylvania law provides that a PCRA petition must be filed within one year after the date a defendant's judgment becomes final. 42 Pa. C.S.A. §9545(b)(1). Williams' judgment became final 30 days after the Pennsylvania Superior Court denied his direct appeal on August 13, 2019, at the expiration of the period during which he could have sought review in the Pennsylvania Supreme Court. Any PCRA petition filed after approximately September 13, 2020, would, therefore, be rejected as untimely.

8

As is also explained above, Williams can overcome the procedural default of this claim only if he can show cause for his default and resulting prejudice, or that failure to consider his claim would cause a fundamental miscarriage of justice, i.e., that he can show actual innocence. *Edwards*, *supra*. Williams has not attempted to show either of these things, and they are not apparent on the record. Therefore, the claim cannot be considered on its merits.

Further, as the Commonwealth points out, the claim would not succeed even if it could be considered. Michael Rich and Blanche Jackson both testified at trial that they saw Williams, whom they recognized, run away holding a silver gun or a silver and black gun, immediately after the shots were fired which killed the victim. 2023 WL 2231257 at *1. Further, the jury heard testimony from a police officer who testified that, when he arrested Williams, he recovered a silver and black .40 caliber firearm from his waistband. *Id*. Ballistics evidence established that the shots which killed Andrews were fired from the gun recovered from Williams. *Trial Transcript*, June 21, 2017, at 85:1-86:23. Clearly, therefore, the evidence against Williams was sufficient, even if the jury chose to believe the recantation of witness Daryl Locke.

B.    *Vouching in the Prosecutor's Closing Argument*

As with Williams' first claim, this claim is unexhausted and procedurally defaulted. Williams raised this claim in a supplemental Rule 1925 statement in his direct appeal. *See Commonwealth v. Williams* CP-51-CR-0005345-2015, 3690 EDA 2017 (C.C.P. Phila. December 24, 2018), attached to *Commonwealth's Response* as Exhibit B-2, at 3. However, he did not include the claim his Statement of Questions Presented on Appeal in his appellant brief, and the Pennsylvania Superior Court did not view it as having been raised. 2019 WL 3800286 at *2. As explained above, this claim is procedurally defaulted since it is too late for Williams to file a timely PCRA petition.

It could also be noted, as the trial court judge did in her Rule 1925 opinion, that Williams' counsel did not object to any of the statements he cited in his Rule 1925 Statement, so that any claim of vouching was waived under Pennsylvania law. *Commonwealth v. Williams* CP-51-CR-0005345-2015, 3690 EDA 2017 (C.C.P. Phila. December 24, 2018) at 12. In any event, Williams did not point to any statements by the prosecutor in the present habeas petition, so this claim would fail for vagueness even if it could be addressed on its merits. Vague and conclusory allegations which are unsupported by specific facts are insufficient to ground a claim for habeas corpus relief. *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991).

C.    *Ineffective Assistance of Counsel as to Vouching*

Williams argues that his counsel was ineffective under *Strickland* for failing to object when the prosecutor vouched for the credibility of prosecution witnesses during his closing argument. He raised this claim in his PCRA petition, but not in his PCRA appeal, so it is clearly unexhausted and procedurally defaulted. Williams has not shown cause for his default, or that a failure to consider this claim would result in a miscarriage of justice. The claim cannot, therefore, be considered on its merits.

D.    *The Brady Claim Regarding Detectives Pittss and Jenkins*

In this claim, Williams argues that the prosecution violated *Brady* by failing to disclose to the defense the fact that Detective Pittss, who took a statement from witness Daryl Locke, and Detective Jenkins, who interviewed witness Blanche Jackson, were on a "no call" list with the Philadelphia District Attorney's office (meaning, they could not be called as witnesses at trial) because they were known to have engaged in coercive tactics to obtain false statements in prior murder investigations.

10

As this claim pertains to Detective Pitts, it is arguably procedurally defaulted under a state procedural rule. *Coleman v. Thompson*, *supra*. In his direct appeal, Williams argued that the trial court erred in failing to hold an evidentiary hearing on the matter of Detective Pittss' history. 2019 WL 3800268 at *3. However, the Pennsylvania Superior Court deemed the claim waived because Williams did not cite to where in the record he requested a hearing, and provided only "a summary statement that Detective Pittss had a 'customary and unconstitutional practice of suborning perjury to justify an illegal arrest,'" in violation of Pennsylvania rules of appellate procedure. *Id*.

The Pennsylvania Superior Court's decision on the claim regarding Pitts could be questioned; despite Williams' formal drafting imperfections, the nature of the claim was clear, and could easily have been understood as invoking *Brady*. Further, the suppression of the fact that Detective Pittss was believed by the Philadelphia District Attorney to have suborned perjury in the past – if suppression could be shown to have occurred – would support a *Brady* claim, since it would have been favorable to the defense in lending credence to Locke's recantation of his statement to the police.

Nevertheless, suppressed favorable evidence only requires a new trial under *Brady* where it is material. *Giglio v. United States*, *supra*, at 405 U.S. 154. The negative information about Detective Pittss was not material in the *Brady* sense. Even without Locke's statement to the police, the testimony of Rich and Jackson that they saw Williams flee immediately after the victim was shot, holding a gun which looked like the weapon recovered from Williams when he was arrested, would have been difficult to overcome. Thus, Williams could not show a reasonable probability that the result of his trial would have been different if his defense had known of Detective Pitts's past suborning of perjury. *Bagley*, *supra*, at 473 U.S. 682.

11

The claim as to Detective Jenkins is clearly procedurally defaulted as it has never been raised previously.  However, the cause and prejudice needed to excuse procedural default for failure to raise a claim is often found where a plaintiff can show the government's suppression of relevant evidence, in the course of proving a *Brady* claim.  *Johnson v. Folino*, 705 F.3d 117, 128 (3d Cir. 2013), *citing Banks v. Dretke*, 540 U.S. 688, 691 (2004).

Nevertheless, Detective Jenkins' history of misconduct is immaterial.  He did not testify at trial, so his history could not have been used to impeach him.  Further, while Locke testified that "detectives told him what to say in his statement," thus accusing Detective Pitts of misconduct, the trial court noted in its Rule 1925 opinion in the PCRA appeal that Detective Jenkins did not question Locke.  *Commonwealth v. Williams* CP-51-CR-0005345-2015, 2037 EDA 2021 (C.C.P. Phila. December 6, 2021), attached to *Commonwealth's Response* as Exhibit B-4 at 9.  Instead, according to the Commonwealth, Detective Jenkins conducted Jackson's second interview.  *Commonwealth's Response* at 15.  If this is true, it would not render his past misconduct material, since Jackson never disavowed her statement to the police, or claimed her statement was coerced.

E.      *Trial Counsel's Ineffectiveness in Failing to Discover Brady Material*

As above, the past misconduct of Detectives Pitts and Jenkins, which Williams identifies as *Brady* material, was not material to Williams' conviction.  For this reason, even if Williams' trial counsel was ineffective in failing to discover the detectives' history, Williams would still not be entitled to relief under *Strickland*, because that requires both ineffectiveness and resulting prejudice.  466 U.S. at 687.

F.      *The Jury Instructions*

Williams argues:

> During jury instructions, the jury was denied its impartiality and unanimity requirements and rights by the trial court instructing the jury that the fact of specific intent to kill equated malice and that intent and malice could be "inferred" from any number of other "facts" not charged in the criminal information, thus, triggering a mandatory minimum LIFE WITHOUT PAROLE sentence.  Presumed to follow the court's instructions, the record is devoid of any showing that all twelve jurors found Petitioner of all "facts," intent and malice, beyond a reasonable doubt.

*Petition* at ¶ 12, Ground Four, (a).

Williams concedes that this claim was not previously raised on direct appeal, or in his PCRA petition.  *Id*. at (c) and (d).  He cites *Martinez v. Ryan*, 566 U.S. 1 (2012) in arguing that cause for his default may be found due to PCRA counsel's ineffective failure to raise the claim.

The precise nature of this claim is unclear.  Williams has not pointed to the language in the instructions which he claims is erroneous, and has not specified what "facts" the jury may not have found which were necessary to convict him of first-degree murder.  This lack of clarity in itself precludes reliance upon *Martinez*, since *Martinez* requires a showing that the defaulted claim has some merit.  566 U.S. at 14.

As the Commonwealth points out, moreover, the Judge's charges on malice, first-degree murder and specific intent to kill, and circumstantial evidence, all mirrored the Pennsylvania Suggested Standard Criminal Jury Instructions, at §15.2501A, §15.2502A, and § 7.02A.  *Notes of Testimony*, June 22, 2017, at 21-25; 26-29; and 29-3.  Therefore, an argument that any one of the instructions was defective would require considerably more explanation than Williams has provided.[1]

---

[1] Williams' reference to an "inference" by the jury, and to "intent", raises a possibility that he intends to challenge the part of the Judge's instruction on first-degree murder where she said:  "If you believe that the Defendant intentionally used a deadly weapon on a vital part of the victim's body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the Defendant had the specific intent to kill."

G.     *Ineffective Assistance of Counsel as to the Jury Instructions*

Aside from arguing that PCRA counsel was ineffective under *Martinez*, Williams argues that his trial counsel was ineffective for failing to object to the defective jury instructions.  As above, however, he has not explained with any clarity what flaws in which jury instructions he believes counsel should have challenged.  Accordingly, he cannot show ineffective assistance of counsel in this respect.

H.     *An Evidentiary Hearing is Unavailable*

In his reply memorandum, Williams argues that he is entitled to an evidentiary hearing to determine whether he actually ran with a limp, as Rich and Jackson testified.  Because this is not a claim he raised before the Commonwealth Courts, he can obtain a hearing only if his claim either relies upon (i) a new, and retroactive, rule of constitutional law; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence.  28 U.S.C. §2254(e).  Further, the facts underlying the claim must be sufficient to establish that, but for constitutional error, no reasonable factfinder would have found the defendant guilty.  *Id*.

This is intentionally a "stringent" standard.  *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022); *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011).  "Although state prisoners may sometimes submit new evidence in federal court, [AEDPA] is designed to strongly discourage them from doing so."  *Cullen*, *supra*.

Williams clearly does not meet the §2254(e) standard.  Obviously, his claim does not rely on a new Constitutional rule.  Further, he would have known at the time of trial whether or not

---

*Notes of Testimony*, June 22, 2017, at 31:15-22.  In that case, Williams' argument would be that there was an insufficient showing that he shot Robert Andrews to support a finding of intent to kill.  As discussed above, however, the testimony from Rich and Jackson, who both recognized Williams outside their house holding a gun, and then fleeing, immediately after they heard shots, and immediately before Andrews was found to have been shot, permitted the jury to conclude that Williams was the shooter.  Since the jury foreperson told the Court that all jurors agreed on the verdict of guilty in the first degree, it is clear that all twelve jurors agreed on this.  *Id*. at 61:5-14.

14

he limped.  Therefore, it is not possible to find that the factual predicate of his claim was unavailable to him until now.  He is not, therefore, entitled to an evidentiary hearing.

IV.     *Conclusion*

For the reasons set forth above, I now make the following:

### *RECOMMENDATION*

AND NOW, this 5th day of August, 2024, it is respectfully recommended that this petition be dismissed with prejudice.  There has been <u>no</u> substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability.

The petitioner may file objections to this Report and Recommendation within fourteen days after being served with a copy.  *See* Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.  *See Leyva v. Williams*, 504 F.3d 357, 364 (3d Cir. 2007).


BY THE COURT:


*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE