**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CURTIS WILLIAMS** | : | **CIVIL ACTION** |
| *Petitioner-pro se* | : | |
| | : | **NO. 23-4033** |
| **v.** | : | |
| | : | |
| **J. RIVELLO,** *et al.* | : | |
| *Respondents* | : | |

# O R D E R

**AND NOW**, this 8ᵗʰ day of April 2025, upon consideration of *pro se* Petitioner Curtis Williams' ("Petitioner") petition for writ of *habeas corpus*, (the "Petition"), filed pursuant to 28 U.S.C. § 2254, (ECF 2); Respondents' response in opposition, (ECF 16); Petitioner's reply, (ECF 19); the *Report and Recommendation* issued by the Honorable Scott Reid, United States Magistrate Judge (the "Magistrate Judge"), which recommended that the Petition be dismissed, (ECF 20); Petitioner's *pro se* objections to the *Report and Recommendation*, (ECF 21); and Petitioner's *motion for an evidentiary hearing on 28 U.S.C. §2254 petition*,[1] (ECF 27), and after conducting a *de novo* review of the objections, it is hereby **ORDERED** that:

1.     The *Report and Recommendation* is **APPROVED** and **ADOPTED**;

2.     The objections to the *Report and Recommendation* are without merit and are **OVERRULED**;[2]

---

[1]     On August 5, 2024, the Magistrate Judge issued a Report and Recommendation ("R&R") which recommended that Petitioner's *habeas corpus* petition be dismissed. Petitioner filed objections, (ECF 21), and a *motion for an evidentiary hearing on 28 U.S.C. §2254 petition*, (ECF 27), which essentially restates the arguments raised in his objections—namely that he is entitled to an evidentiary hearing on his *Brady* claim. For the reasons set forth, Petitioner's objections are overruled, and Petitioner's motion is denied.

[2]     In the R&R, the Magistrate Judge provided a succinct summary of the relevant procedural history and facts which this Court herein incorporates. However, to provide context to Petitioner's objections, a brief recitation of the relevant procedural events is warranted:

On June 22, 2017, Petitioner was convicted by a jury in state court of first-degree murder; carrying a firearm without a license; carrying a firearm in public; and possession of an instrument of crime. Ultimately, Petitioner was sentenced, *inter alia*, to life in prison without the possibility of parole. Although trial counsel initially filed an appeal, Petitioner chose to continue his appeal *pro se* and filed a waiver of counsel. After a *Grazier* hearing was held, Petitioner's motion was granted, and he was permitted to proceed *pro se* in his direct appeal.

On direct appeal to the Superior Court of Pennsylvania (the "Superior Court"), Petitioner raised the following issues: (1) that the trial court erred in denying him an evidentiary hearing on

his claim that Detective James Pitts, one of the detectives who interrogated a witness, was known to fabricate evidence and suborn perjury; and (2) that the prosecution had waived its right to try him for first-degree murder by declining to seek the death penalty. *See Commonwealth v. Williams*, 2019 WL 3800286, at \*2-3 (Pa. Super. Ct. Aug. 13, 2019). The Superior Court denied his appeal on August 13, 2019. Petitioner did not seek review before the Supreme Court of Pennsylvania.

Petitioner filed a timely *pro se* petition with the trial court pursuant to the Pennsylvania Post Conviction Relief Act, ("PCRA"), 42 Pa. Cons. Stat. § 9541, *et seq*. In his PCRA petition, Petitioner raised three reasons why trial counsel provided ineffective assistance: trial counsel was ineffective for (a) failing to object to vouching in the prosecutor's closing argument; (b) failing to raise the claim that he could not be tried for first-degree murder because the Commonwealth did not seek the death penalty; and (c) failing to investigate Detective Pitts' misconduct. The PCRA petition was dismissed without a hearing.

Petitioner appealed the dismissal of his PCRA petition to the Superior Court. On February 27, 2023, the Superior Court affirmed the dismissal of his PCRA petition. On October 16, 2023, Petitioner filed the underlying petition for *habeas corpus* relief.

In his *habeas corpus* petition, Petitioner asserts the following claims: (1) insufficiency of evidence; (2) counsel for the prosecution committed impermissible vouching; (3) the prosecution committed *Brady* violations by concealing police misconduct and the state court failed to hold an evidentiary hearing on the *Brady* violations; (4) defective jury instructions; (5) trial counsel was ineffective for failing to object to vouching, failing to investigate police misconduct, failing to enforce Petitioner's rights under *Brady*, and failing to object to the jury instructions. In its response, Respondents argue that Petitioner's claims should be dismissed as procedurally defaulted. (ECF 16, at p. 2). In the R&R, the Magistrate Judge thoroughly considered Petitioner's claims and found that Petitioner's claims were either procedurally defaulted or lacked merit. (ECF 20). Petitioner disagreed and filed objections. (ECF 21).

In his objections, Petitioner argues that the Magistrate Judge erred in: (a) re-characterizing his constitutional claims and then only addressing parts of the claim or a different claim than the one raised; and (b) not holding an evidentiary hearing and/or opening discovery to resolve factual disputes. (ECF 20). Petitioner appears to be arguing that an evidentiary hearing is warranted for his *Brady* violation claim and to show his "factual innocence." (*Id.* at pp. 2-3).

Where objections to an R&R are filed, the court must conduct a *de novo* review of the contested portions of the R&R, *see Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(C)), provided the objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In conducting its *de novo* review, a court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. 28 U.S.C. § 636(b)(1). Although the review is *de novo*, the statute permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7.

After carefully reviewing the pertinent portions of the record *de novo,* this Court finds that no error was committed by the Magistrate Judge in the analysis of Petitioner's claims and agrees with and adopts the Magistrate Judge's recommendations. Notwithstanding, this Court will briefly address Petitioner's objections.

*Re-characterization of Petitioner's constitutional claims*

This Court is unsure what Petitioner specifically refers to when he baldly objects to the "re-characterizing his constitutional claims," an argument he has not adequately developed. Regardless, this Court has carefully

reviewed the R&R and finds that it adequately and correctly characterizes and addresses each of Petitioner's claims as articulated by Petitioner in the Petition. Accordingly, this objection is overruled.

*Denial of an evidentiary hearing*

Petitioner objects that the Magistrate Judge did not allow an evidentiary hearing and argues that he is entitled to an evidentiary hearing and/or discovery. In particular, Petitioner appears to object that while the Magistrate Judge's R&R focused on whether an evidentiary hearing was necessary to determine if Petitioner ran with a limp, Petitioner contends that the Magistrate Judge's focus was mistaken and that instead, it is Petitioner's *Brady* claim that necessitates an evidentiary hearing. (ECF 21, at p. 3).

"In cases where an application for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474; *see also Fooks v. Superintendent, Smithfield SCI*, 96 F.4th 595, 598 (3d Cir. 2024). If the record precludes *habeas* relief, a district court is not required to hold an evidentiary hearing. *Schriro*, 550 U.S. at 474. Thus, for the purposes of this Order, this Court need not determine whether Petitioner would be required to meet a heightened standard, such as that under 28 U.S.C. § 2254(e)(2), in order to qualify for an evidentiary hearing. Suffice it to say that if Petitioner is not entitled to relief under the above-mentioned standard, he also cannot show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense," as is required under 28 U.S.C. § 2254(e)(2). For the reasons set forth below, this Court will not hold an evidentiary hearing.

To establish a *Brady* violation requires that: "(1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment." *U.S. v. Schneider*, 801 F.3d 186, 202 (3d Cir. 2015). Evidence is favorable if it is either impeaching or exculpatory. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *U.S. v. Bagley*, 473 U.S. 667, 682 (1985). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id*.

Here, Petitioner argues the prosecution violated its *Brady* obligation by failing to disclose that Detective Pitts and Detective Jenkins, two officers involved in his case, were on a "no call" list with the Philadelphia District Attorney's office. In their response, Respondents confirmed that Detectives Pitts and Jenkins have been identified by the District Attorney's Office "as having engaged in misconduct that necessitates disclosure pursuant to *Brady*." (ECF 16, at p. 10). Notwithstanding, because of the other evidence presented during the trial, there is not a "reasonable probability" that this would have affected the verdict.

Specific to Petitioner's case, Detective Pitts interviewed Drayl Harrison-Locke, who gave a statement indicating that two weeks before the murder Petitioner showed him a .40 caliber Smith & Wesson firearm – the same type of gun as the murder weapon. Of note, Harrison-Locke recanted this statement at trial, testifying that detectives told him what to say. Detective Jenkins, in turn, interviewed Blanche Jackson, who testified that she saw Petitioner running away from the murder scene with a gun. Jackson did not recant her statement at trial. Additionally, Michael Rich testified that he heard gunshots, looked out his bedroom window, and saw Defendant running down the street carrying a gun. Anne Marie Barnes, a Forensic Laboratory Supervisor and Firearms Examiner for the City of Philadelphia, concluded that the gun recovered from Petitioner a week later matched the fired cartridge casings and bullets from the crime scene.

As noted by the Magistrate Judge, even without Detective Pitts' testimony and Harrison-Locke's statement, two independent witnesses not connected to Detective Pitts, identified Petitioner as the individual

fleeing the scene with a gun. One of those witnesses, Jackson, was interviewed by Detective Jenkins, and did not recant her statements at trial. In fact, Jackson described Detective Jenkins as "somebody that I felt comfortable enough to talk to." (Tr. June 20, 2017, at p. 104). Additionally, at the time of his arrest a week after the murder, Petitioner was found with a gun that forensically matched the cartridge casings and bullets from the crime scene. *See Smith v. Cain*, 565 U.S. 73, 76 (2012) (noting that impeachment evidence may not be material if other evidence is "strong enough to sustain confidence in the verdict," though that was not the case in *Smith*); *U.S. v. Walker*, 657 F.3d 160, 188 (3d Cir. 2011) (finding no *Brady* violation, *in part*, because the testimony of the witness who could have been impeached was "not the only testimony providing direct support to the prosecution"). Additionally, Detective Jenkins did not testify at trial, and so information about his misconduct could not have been used to impeach him. *See U.S. v. Rodriguez*, 489 F. App'x 528 (3d Cir. 2012) (noting that the "only possible relevant" investigations were of the police officers who testified); *Gibson v. Sec'y Pa. Dep't of Corrs.*, 718 F. App'x 126 (3d Cir. 2017) (noting that information about a witness's brother was not material for *Brady* purposes, *in part*, because he did not testify).

As noted, in deciding whether an evidentiary hearing is necessary, a district court must consider whether Petitioner's factual allegations "would entitle [him] to federal habeas relief." *Schriro*, 550 U.S. at 474; *see also Fooks*, 96 F.4th at 598. If *habeas* relief is precluded, a court is not required to conduct an evidentiary hearing. *Schriro*, 550 U.S. at 474. Here, because this Court finds that based on the testimony of other witnesses, Petitioner is not entitled to *habeas* relief on his *Brady* claim, even if he established that Detective Pitts and Jenkins engaged in significant misconduct. As such, he is not entitled to an evidentiary hearing to develop these facts. Accordingly, Petitioner's objection that an evidentiary hearing is required is overruled and, likewise, his motion for an evidentiary hearing is denied.

### Rich's testimony

Petitioner objects to the Magistrate Judge's description of Rich's testimony. (ECF 21, at p. 4). Specifically, Petitioner argues that Rich "affirmatively admitt[sic]s to not seeing this Petitioner" on the night of the murder. (*Id.*). Petitioner points this Court to a portion of Rich's testimony in which he testifies that he did not see a person's face but, rather, saw the back of him while he was running away. (Tr. June 20, 2017, at p. 53).

Petitioner's argument, however, falls short since Rich further testifies that the person he saw ran with a limp. (*Id.* at pp. 53-54). Rich also testified that he had previously seen Petitioner around the neighborhood and saw him run with a limp. (*Id.* at pp. 24-25, 56-57). Further, Rich identified Petitioner in the courtroom as the man he saw running with a gun away from the murder scene, (*id.* at pp. 14-15), and had earlier identified Petitioner from a photograph at the police station a week after the murder, (*id.* at p. 34). Petitioner's objection that Rich "affirmatively admitt[sic]s to not seeing this Petitioner" is a mischaracterization of Rich's testimony, and as such, the objection is overruled.

### Actual innocence

In his objections, Petitioner notes that he wishes to present "FACTS and EVIDENCE that are indicative to his FACTUAL INNOCENCE." (ECF 21, at p. 2). For the sake of judicial completeness, this Court has construed Petitioner's statement as an assertion of actual innocence and will consider whether Petitioner can overcome procedural default based on an argument of actual innocence.

In *Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004), *cert. denied*, 543 U.S. 1070 (2005), the United States Court of Appeals for the Third Circuit (the "Third Circuit") set forth a two-step inquiry courts must make in deciding whether a claim of actual innocence overcomes a procedural default. *First*, a court must decide "whether [petitioner] has presented new reliable evidence . . . not presented at trial." *Id.* (internal quotation marks and citation omitted). With respect to this inquiry, the Supreme Court of the United States has held:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires a petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup v. Delo*, 513 U.S. 298, 324 (1995) (internal citations omitted).

*Second*, only if a petitioner first puts forth new evidence not considered by the jury does a court ask "whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Hubbard*, 378 F.3d at 340. In this second inquiry, a court "must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial," and "assess how reasonable jurors would react to the overall, newly supplemented record." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks and citation omitted). The Supreme Court repeatedly has emphasized that:

> The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Schlup*, 513 U.S. at 329. "[T]he petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims" only "if a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error." *Id.* at 316.

To the extent Petitioner is arguing that evidence of Detective Pitts and Jenkins's misconduct shows that he is entitled to the actual innocence exception, this Court disagrees. As noted above, even discounting Harrison-Locke's testimony, two other witnesses saw Petitioner fleeing the scene with a gun. The witness that Detective Jenkins interviewed did not recant her testimony at trial. Moreover, the forensic evidence connected the weapon recovered from Petitioner at the time of his arrest to the bullet casings found at the murder scene. Detective Pitts and Jenkins's alleged misconduct, even if presented, is unlikely to have affected a reasonable juror's evaluation of the totality of the evidence supporting Petitioner's conviction. As such, this is not one of the "rarest of cases" in which it is "more likely than not that no reasonable juror would have convicted him in light of" this evidence. *Id*. at 338, 340.

To the extent Petitioner is trying to assert his actual innocence based on the fact that he did not run with a limp, Petitioner has not shown that this evidence is "new" in that it was newly discovered, or that counsel failed to discover it. *See Wallace v. Mahanoy*, 2 F.4th 133, 152-53 (3d Cir. 2021) (concluding that petitioner's purported evidence about the role Ritalin played in his psychosis was not "new" because defense counsel provided the doctors who examined petitioner with records showing he was prescribed Ritalin); *Hubbard*, 378 F.3d at 340 (finding petitioner's own testimony is not "new" because it was available at trial and he chose not to present it to the jury). Additionally, because of the above-mentioned evidence, Petitioner's alleged lack of a limp would not

3.      The petition for a writ of *habeas corpus*, (ECF 1), is **DISMISSED**; and

4.      No probable cause exists to issue a certificate of appealability.[3]

The Clerk of Court is directed to mark this matter **CLOSED**.

**BY THE COURT:**
/s/ *Nitza I. Quiñones Alejandro*
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

---

make it "more likely than not that no reasonable juror" would have convicted him.  Accordingly, Petitioner is not entitled to the actual innocence exception.

As noted, this Court finds that the Magistrate Judge thoroughly reviewed each of these arguments in the R&R and correctly concluded that Petitioner's claims were unexhausted, procedurally defaulted, and/or without merit.  This Court also reviewed the pertinent portions of the record *de novo* and finds that no error was committed by the Magistrate Judge in the analysis of Petitioner's claims.  This Court has reviewed Petitioner's objections and based on the reasons set forth, finds that they lack merit.  Accordingly, Petitioner's objections are overruled, and the R&R is adopted and approved in its entirety.

Petitioner also requests that this Court appoint counsel.  "There is no 'automatic' constitutional right to counsel in a federal habeas corpus proceeding." *Reese v. Fulcomer*, 946 F.2d 247, 263 (3d Cir. 1991), *superseded on other grounds by statute*, 28 U.S.C. § 2254(d).  However, this Court may provide representation to a financially eligible person when "the interests of justice so require."  18 U.S.C.A. § 3006A(a)(1)(2)(B).  Because this Court concludes that Petitioner's *habeas* petition lacks merit, Petitioner's request for counsel is denied.

[3]      A district court may issue a certificate of appealability only upon "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court rejects a constitutional claim on the merits, the Petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Lambert v. Blackwell*, 387 F.3d 210, 230 (3d Cir. 2004).  When a district court denies a *habeas* petition on procedural grounds, the prisoner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.  For the reasons set forth, this Court concludes Petitioner has not demonstrated that reasonable jurists would find this Court's assessment "debatable." *Slack*, 529 U.S. at 484.  Accordingly, there is no basis for the issuance of a certificate of appealability.